### DAVIDSON and others v. FOUR HUNDRED TONS IRON ORE.

*(District Court, D. New Jersey. October 2, 1883.)*

SUIT TO RECOVER DEMURRAGE, AND FOR BREACH OF CONTRACT OF AFFREIGHT-MENT.

    Libelants were not permitted to recover in a suit for demurrage and damages by reason of a breach of contract to carry freight, the facts showing that the failure on the part of the defendants to fulfill their contract was caused in a measure by the acts of the libelants, and in part by circumstances over which defendants had no control, and with which they could not be fairly charged, and where, under the contract, there appeared to be no agreement to pay demurrage except in the case of unreasonable delay, and there was no evidence of such unreasonable delay.

In Admiralty.

*Beebe, Wilcox & Hobbs,* for libelants.

*Samuel H. Valentine,* for respondent.

NIXON, J. This is a proceeding *in rem* on a contract of affreightment. The libel alleges that on the fifteenth of October, 1882, the libelants agreed with the respondent, D. W. R. Read & Co., to lighter or transport from the bark Mattea, which was about to arrive into the port of New York, a cargo of about 700 tons of iron ore, and to carry the same from the port of New York to the city of Hudson, at the rate of freight of 60 cents per ton; the said respondent also agreeing to pay demurrage for the detention of libelants' boats at the rate of eight dollars per day for each boat; that said bark did not arrive at New York, and was not ready to discharge her cargo, until November 27, 1882; that on the arrival of the bark the libelants' lighter, called the Sylvan Stream, received on board 293 tons of said ore, and proceeded forthwith to Hudson, and discharged the same in as good condition and order as received; but that said lighter was detained by the respondent four days, and that libelants are entitled to the sum of $32 for demurrage; that in respect to the residue of the cargo, notwithstanding the libelants had their lighters along-side of the bark in readiness to receive the same, the respondent delayed having the same discharged into the lighter until it was impossible to proceed to Hudson on account of the ice, and the close of navigation in conse-

quence thereof; and that the libelants have been damaged in the sum of $788 from the neglect of the respondent to carry out his contract in respect to said ore.

The respondent, in answering, admits that he entered into a contract with libelants in the month of October, 1882, for the latter to transport a cargo of 700 tons of iron ore from the bark Mattea when she should arrive in New York, and to carry the same in lighters to the city of Hudson for 60 cents per ton freight,—the said ore to be lightered from along-side of the bark to along-side of Columbia furnace, at Hudson; but denies that he ever stated that the Mattea was about due in the port of New York. His only statement to libelant was that the said bark was reported to have sailed from Cartagena, in Spain, on or about October 7, 1882. He further denies that he agreed to pay any demurrage for detention of libelants' boats at the rate of eight dollars per day, and alleges that the only agreement in reference to demurrage was that said ore should be discharged at Hudson within a reasonable time, as customary,—demurrage in the event of further detention to be paid at the above rate. He denies that libelants' lighters were ordered along-side of the bark four days or any other time before the bark was in readiness to discharge her cargo, or that the lighter Sylvan Stream was detained in loading, or that he caused any delay in the discharge of the residue of the cargo, or that he has failed to carry out his contract, whereby the libelants have suffered damage in the sum of $788, or any sum whatever. He further alleges that if any delay occurred to libellants' lighters in loading it was brought about by causes over which respondent had no control, and that, on the other hand, the libelants have failed and neglected to perform their contract to lighter and transport said iron ore.

The controversy has arisen in this case from two causes: (1) Because the Mattea did not arrive at the port of New York as soon as both parties had reason to expect her arrival; and (2) because the cargo was not discharged from the vessel as rapidly as the libelants and the respondent hoped it would be when the contract was entered into. The delays thence arising carried the transaction over into December, when the navigation was closed by the cold weather, and when the ice in the river hindered the libelants from performing the contract. The only reference to demurrage in the agreement was for detention at Hudson, and it does not appear that there was any detention there. No decree for demurrage at the port of New York can be made, unless libelants show that there was unreasonable delay in loading the lighters, and that it arose from the fault of respondent. The testimony in the case, fairly considered, fails to establish either of these propositions. The bark was unladen with as much dispatch as appears to be usual in the case of Italian sailing vessels, and I do not perceive that the delays which occurred from the loss of the custom-house permit to discharge the cargo, from the inter-

vention of Thanksgiving day, and from the neglect of the custom-house weighers to weigh the ore when delivered to the lighters, are properly chargeable to the respondent. With regard to libelants' claim for freight, it appears that they were paid the contract price for the 293 tons of ore which the Sylvan Stream delivered at Hudson. No other part of the cargo was taken there. It was loaded on the Julia Hanlon and William B. Marks, two other lighters belonging to libelants. Being prevented by the ice from going to Hudson, they were moored with their cargoes at the Morris canal basin, Jersey City. While there, to-wit, on the fourteenth of December, 1882, Francis Starrs and others filed a libel in this court against the respondent, and issued a monition thereon, with a clause of foreign attachment, on which the marshal of the district seized the ore as the property of the respondent. Another libel of like character was filed December 22, 1882, by George W. Stilwell, Jr., libelant. Pending these proceedings the libelants in this case filed their libel January 2, 1883, obtaining from the court an order for the sale of the cargo as perishable property, under the authority of which the marshal made sale, and paid the proceeds into the registry of the court. On January 17, 1883, a final decree was entered in favor of Starrs and others. When the costs in this case were taxed a claim was made in behalf of the libelants in this case for demurrage for the detention of their boats, the Julia Hanlon and William B. Marks, with the ore, until the marshal made sale. The court held that under the circumstances they were not entitled to demurrage, but should have out of the proceeds a reasonable compensation for the use of their boats for the storage of the cargo, and they were allowed $125.

When the contract for delivering the ore at Hudson was entered into, both parties doubtless supposed that the Mattea would shortly arrive. Nothing was known respecting her, except that she had sailed from Cartagena about October 7th, and was due in New York the latter part of the same month. But, by stress of weather, she had a long passage, and did not come until November 27th. I do not find any guaranty by the respondent that she would reach New York sooner; nor do I find any reservation on the part of the libelants that they should be excused from carrying out their contract if the ice and the cold weather should render it inconvenient or expensive. I have already held that the evidence does not sustain the allegation that there was an unreasonable delay on the part of the respondent in delivering the cargo to the lighters. It is not easy to perceive how any claim for freight can be maintained when the testimony reveals that while the boats of the libelants were lying at Jersey City, on account of the ice in the river, the libelants themselves caused the cargoes to be seized and sold, by order of the court, whereby they were utterly unable to fulfill the contract to transport the ore to Hudson.

The libel must be dismissed, with costs.